Roberta BORENSTEIN

v.

Anthony TUCKER & R.L. Day, Inc.

Civ. No. B–89–189(WWE).

United States District Court,
D. Connecticut.

Jan. 9, 1991.

Stephen P. Horner, Gregory and Adams, Westport, Conn., for plaintiff.

William J. Wenzel, James T. Shearin, Pullman Comley Bradley & Reeves, Bridgeport, Conn., for defendants.

RULING ON DEFENDANT'S MOTION
TO DISMISS AND COMPEL
ARBITRATION

EGINTON, District Judge.

Plaintiff, Roberta Borenstein, commenced this action against defendant Anthony Tucker & R.L. Day, Inc., alleging that she was constructively discharged from her position as a stockbroker in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Defendant has moved to dismiss the complaint and compel arbitration. In support of this motion, defendant points out that plaintiff, at the commencement of her employment, signed the Uniform Application for Securities Industry Registration or Transfer, which contained an agreement to arbitrate all her employment disputes. Plaintiff does not dispute that she signed this agreement. The only issue in contention is the state of the law with regard to arbitration of employment discrimination claims. For the reasons set forth below, defendant's motion to dismiss and compel arbitration will be denied.

DISCUSSION

The subject of the arbitrability of labor and employment claims is an issue of relatively recent vintage. It is also an area of the law which has divided those courts which have heretofore addressed the issue. In *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court considered for the first time the enforceability of an arbitration provision contained in a collective bargaining agreement. The Court found that given an employee's limited ability to control his own destiny in collective bar-

gaining, there can be no prospective waiver of an employee's rights under Title VII. *Alexander*, 415 U.S. at 51–52, 94 S.Ct. at 1021–22. In *Barrentine v. Arkansas Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Supreme Court followed *Alexander* and held that wage claims brought under the Fair Labor Standards Act are not barred by the prior submission of such claims to arbitration. Since then, following *Alexander* and *Barrentine*, the First, Third, Eighth and Tenth Circuits have held that Title VII and ADEA claims are not subject to arbitration. *See Nicholson v. CPC International, Inc.*, 877 F.2d 221 (3rd Cir.1989); *Utley v. Goldman, Sachs & Co.*, 883 F.2d 184 (1st Cir. 1989); *Cooper v. Asplundh Tree Expert Company*, 836 F.2d 1544, 1553 (10th Cir. 1988); *Swenson v. Management Recruiters International Inc.*, 858 F.2d 1304, 1305–07 (8th Cir.1988).

Defendant suggests, however, that since *Alexander* and *Barrentine*, the Supreme Court has made a sharp turn in its position concerning arbitration in a broad range of disputes, many of which had been previously excluded from arbitration. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (upholding agreement to arbitrate claims under the Securities Act of 1933); *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (wage claim under California Labor Code subject to arbitration, despite California statute which invalidated arbitration agreements in wage collection cases); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (claims under Section 10(b) of the Securities and Exchange Act of 1934 and *RICO* were arbitrable under predispute arbitration agreements); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (federal anti-trust claims must be arbitrated under an arbitration agreement involving international transactions); *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (holding state law

claims, pendant to non-arbitral federal securities claims must be arbitrated, thereby rejecting the "intertwining" doctrine that previously prevented the arbitration of such pendant claims); *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (holding claims asserted under the California Franchise Investment Law were arbitrable, despite California law invalidating arbitration clauses of such sort).

Defendant argues that in these cases the Supreme Court has whittled away the bases for its previous reluctance to enforce arbitration provisions and created a strong policy favoring arbitration. Defendant suggests that this Court should follow the directive of the Supreme Court set forth in *Shearson/American Express, Inc. v. Mcmahon*, 482 U.S. at 226–27, 107 S.Ct. at 2337–38.

> The Arbitration Act, standing alone, … mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent "will be deducible from [the statute's] text or legislative history," or from an inherent conflict between arbitration and the statute's underlying purposes. (citations omitted)

Defendant notes that the Fourth Circuit and a California Appellate court have, following *Shearson*, recently held that ADEA claims are subject to arbitration agreements. In *Gilmer v. Interstate/Johnson Lane Corp.*, 895 F.2d 195 (4th Cir.1990), the Fourth Circuit found that "nothing in the text, legislative history, or underlying purposes of the ADEA [indicated] a Congressional intent to preclude enforcement of arbitration agreements." *Id.* at 197. *See also Cook v. Barratt American, Inc.*,

219 Cal.App.3d 1004, 268 Cal.Rptr. 629 * (1990).

Neither the United States Court of Appeals for the Second Circuit nor the district courts within the Circuit have addressed the precise question presented in this case. Defendants suggest, however, that the most recent discussions on the subject of arbitration in this circuit indicate a trend toward the enforcement of arbitration agreements involving statutory rights. In support of this proposition, defendant cites *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Georgiadis*, 903 F.2d 109 (2d Cir. 1990) and *Paine Webber Inc. v. Pitchford*, 721 F.Supp. 542 (S.D.N.Y.1989) in which the respective courts enforced an arbitration provision in a customer agreement, and *Steele v. L.F. Rothschild & Company, Inc.*, 701 F.Supp. 407 (S.D.N.Y.1988), where the court upheld the arbitrability of the plaintiff's Equal Pay Act claim because she had agreed to arbitrate employment disputes as part of her employment contract with defendant.

■ Plaintiff contends, on the other hand, that Congress has articulated an intent in the texts and legislative histories of both Title VII and the ADEA to preclude prospective waiver of judicial remedies.[1] This court agrees. In *Nicholson v. CPC Intern., Inc.*, 877 F.2d 221 (3rd Cir.1989), the Third Circuit conducted a lengthy analysis of the text and legislative history and objectives of the ADEA. *Id.* at 224–230. Ultimately, that court concluded that the ADEA "is one of the statutory schemes that present the 'inherent conflict [with] arbitration' referred to by the Supreme Court in *Shearson*." *Id.* at 227. Significantly, the *Nicholson* court did not base its decision on any disparagement of the competence or sophistication of modern arbitrators. As defendant correctly notes, such suspicion of arbitrators has been discredited by the holdings in *Shearson* and *Mitsubishi*. Rather, the *Nicholson* court focused on the intent of Congress with respect to the particular statute. This court agrees with the conclusion of the *Nicholson* court that Congress did not intend that a contractual arbitration provision should preclude a plaintiff from access to a judicial forum for a claim brought pursuant to the ADEA. *See also Criswell v. Western Airlines, Inc.*, 709 F.2d 544, 547–49 (9th Cir.1983), *aff'd on other grounds*, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985).

Similarly, this court will not displace access to the courts for claims brought pursuant to Title VII. Just as in the case of a claim brought pursuant to the ADEA, Title VII claims must first be filed with the EEOC. As pointed out in *Nicholson*, not only is the EEOC charged with resolving these claims through informal means, but the text of the statute requires the EEOC to eliminate the discriminatory practice or practices alleged by encouraging voluntary compliance if possible. 42 U.S.C. § 2000e–5. Just as in the case of the ADEA, it is only through the conciliation process that the EEOC has the opportunity to secure voluntary compliance. It is this task of eliminating discriminatory practices from the workplace that arbitration cannot effectively accomplish.

■ Other factors also militate against arbitration in the context of a Title VII claim. First, arbitral boards do not have the power to award broad equitable relief which courts have under 42 U.S.C. § 2000e–5(g). They cannot, for example, enjoin employers from engaging in future acts of discrimination. The power of the arbitrators is limited solely to the parties and the grievances before them. Thus, arbitration would not satisfy the policy concerns behind the Title VII legislation. Further, no statutory provision gives the EEOC the power to affect the arbitration procedure. In this respect it is unlike the Securities Exchange Commission ("SEC") referred to by the courts in *Shearson* and

---

* Editor's Note: Review Denied and ordered not officially published July 11, 1990. See Cal. Rules of Court, Rule 976.

1. Plaintiff also argues that the motion to dismiss and to compel arbitration should be denied because of the defendant's delay in moving to compel arbitration. Because, for the reasons set forth in the text of this opinion, the court will not compel arbitration, this issue need not be addressed.

*Gilmer.* While the SEC has been given expansive power to ensure the adequacy of the arbitration procedures employed by the self-regulatory agencies such as the national securities exchanges and the registered securities associations, *see Shearson/American Express, Inc. v. Mcmahon,* 482 U.S. at 233, 107 S.Ct. at 2341, no such power has been given to the EEOC. Thus, an examination of Title VII leads to the same conclusion reached by the *Nicholson* court with respect to the ADEA.

Further, while defendant correctly notes the trend toward arbitration, the court does not read the recent Supreme Court cases to apply in the context of statutory discrimination claims. Indeed, none of the Supreme Court cases cited by defendants overrule either explicitly or implicitly that Courts holdings in *Alexander* or *Barrentine.* In fact, as late as 1984, the Supreme Court noted that

> although arbitration is well suited to resolving contractual disputes, our decisions in *Barrentine* and *Gardner–Denver* compel the conclusion that it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard.

*McDonald v. City of West Branch, Michigan,* 466 U.S. 284, 290, 104 S.Ct. 1799, 1803, 80 L.Ed.2d 302 (1984). This conclusion is further supported by the Court's statement in *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.,* "[t]hat is not to say that all controversies implicating statutory rights are suitable for arbitration." 473 U.S. at 627, 105 S.Ct. at 3354; *see also Gavalik v. Continental Can Co.,* 812 F.2d 834, 850 (3d Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987) (noting that Congress did not intend that plaintiff raising discrimination claim under ERISA be required to exhaust arbitral remedies).

Finally, the court notes that defendant seeks a stay of plaintiff's contractual claims pending arbitration. Plaintiff, however, contends that she has not raised any contractual claims. After review of the complaint the court finds that plaintiff has not raised a claim for breach of contract and therefore, in this regard, defendant's motion is moot.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss the complaint and compel arbitration is hereby DENIED. Pursuant to defendant's request, the court hereby certifies the issue of the propriety of compelled arbitration of ADEA and Title VII claims for immediate appeal pursuant to 28 U.S.C. § 1292.