**Tho Dinh TRAN, Plaintiff,**

v.

**Dinh Truong TRAN and the Alphonse Hotel Corp. d/b/a the Carter Hotels, and Jude Hotel Corp., d/b/a the Hotel Kenmore, Defendants.**

**No. 91 Civ. 6818 (RPP).**

United States District Court,
S.D. New York.

March 3, 1994.

Randy A. Dusek, New York City, for plaintiff.

Lichtenberg & Ginach, P.C. by Daniel M. Isaacs, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

In this action against defendants for failure to pay back wages, plaintiff Tho Dinh Tran ("Tran") moves pursuant to Rule 15 of the Federal Rules of Civil Procedure for leave to file a Second Amended Complaint to add a cause of action under the Labor Management Relations Act § 301, 29 U.S.C.A. § 185(a).[1] His original Verified Complaint and his Amended Verified Complaint alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206–207, breach of contract, fraud and unjust enrichment.

---

1. In addition, the plaintiff's proposed Second Amended Verified Complaint would withdraw his demand for punitive damages as well as his claim for relief under New York State Labor Law § 198, which had been added in his First Amended Verified Complaint.

By Opinion and Order dated August 13, 1993, this Court granted defendants' motion for summary judgment with respect to each of plaintiff's state and common law claims on the grounds that the applicable collective bargaining agreement ("CBA") covering plaintiff's employment contained a valid arbitration clause requiring plaintiff to pursue the remedy of arbitration before bringing state and common law claims in federal court. In addition, this Court ordered both parties to submit briefs on whether plaintiff's remaining cause of action for violation of the FLSA also required plaintiff to have sought relief in arbitration. The defendants submitted a brief in compliance with the order of August 13, 1993. Plaintiff defaulted and then moved for leave to file a second amended complaint.

For the reasons set forth below, plaintiff's FLSA claim is dismissed and plaintiff's motion for leave to file a second amended complaint is denied.

## BACKGROUND

As set forth more completely in this Court's Opinion and Order of August 13, 1993, the following are among the undisputed facts in this case. Defendant Dinh Truong Tran ("Truong") is the president and major stockholder of defendants Alphonse Hotel Corp. d/b/a the Carter Hotels and Jude Hotel Corp. d/b/a the Hotel Kenmore, and exercises control over the daily operations and management of each hotel. Amended Complaint ¶¶ 12–13. In March 1982 plaintiff Tran emigrated to the U.S. under the sponsorship of Truong. Def.'s Rule 3(g) Statement ¶ 4. Shortly after his arrival, Tran began working for the Hotel Carter under Truong's supervision at a rate of $300 per week, plus room and board. *Id.* Tran alleges he worked for the Hotel Carter from 1982 until "on or about" June 1988 when he quit. Pl.'s Amended Complaint ¶ 25. Tran asserts that upon Truong's promise to pay plaintiff's claim for back wages, Tran resumed work for the defendant hotels in December 1988 and continued until July 1991, when he quit for a second and final time. *Id.* ¶ 27–30. In his complaint, Tran claims he did not receive any weekly pay until 1985, and after that only

sporadically. *Id.* ¶¶ 20–22. Suit was brought in this Court on October 10, 1991, to recover the back pay allegedly owed to Tran.

The defendant hotels are members of the Hotel Association of New York City, Inc. ("Association"), which entered into a CBA ("1981 CBA") with the New York Hotel and Motel Trade Council, AFL–CIO ("Union") on March 17, 1981. A subsequent CBA ("1985 CBA"), entered into by the Association and the Union on June 26, 1985, superseded the 1981 CBA. The plaintiff became a beneficiary under the 1981 CBA 30 days after he began his employment with the defendant hotels. 1981 CBA at 3; Amended Complaint ¶ 56. Indeed, Tran claims that at least as of "late April 1982" he was a member of the Union. Plaintiff's Rule 3(g) Statement in Opposition ¶¶ 16–17. There is no dispute that plaintiff was subject to the 1981 and 1985 CBAs, including their provisions on grievance procedures. 1981 CBA ¶ 15; 1985 CBA ¶ 26. The relevant provision in both CBAs reads as follows:

## COMPLAINTS, GRIEVANCES AND ARBITRATION

All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts[,] conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire to be known as the Impartial Chairman, and his decision shall be final and binding upon the parties hereto. Any such complaint, dispute or grievance involving an Employer member of the Association shall in the first instance, be submitted to the Labor Manager who will be appointed and employed by the Association to consider and adjust with a duly accredited representative of the Union, for their joint consideration and adjustment; if they agree, such decision shall be binding on the parties hereto. Should the matter not be resolved by the Labor Manager and the representative of the Union, it

shall then be referred to the Impartial Chairman as aforesaid.

1981 CBA ¶ 15; 1985 CBA ¶ 26.

Six days after this Court's Opinion and Order of August 13, 1993, which dismissed plaintiff's state and common law claims, plaintiff invoked this section of the CBAs by a letter from counsel demanding that the Union arbitrate plaintiff's claim for back wages. Pl.'s counsel's Aff't in Support, Exh. D. After receiving a letter from the Union dated September 17, 1993, denying his request, plaintiff filed this motion for leave to file a second amended complaint.

## DISCUSSION

### A. *Applicability of Arbitration to FLSA Claim*

▮ Although plaintiff did not file a brief responsive to the Court's Order of August 13, 1993, it is clear that, as with his other claims, he was required to exhaust his remedy in arbitration before bringing an FLSA claim in this Court. Federal law requires the enforcement of agreements to arbitrate unless the party opposing arbitration can show "either from the statute's text or legislative history or from 'an inherent conflict between arbitration and the statute's underlying purpose' " a Congressional intent "to preclude a waiver of the judicial forum." *Steele v. L.F. Rothschild & Co. Inc.,* 701 F.Supp. 407, 408 (S.D.N.Y.) (quoting *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 227, 107 S.Ct. 2332, 2338, 96 L.Ed.2d 185 (1987)) *appeal dismissed,* 864 F.2d 1 (2d Cir.1988). *Steele* held that a congressional intent to preclude a waiver of the judicial forum did not exist with respect to the FLSA, at least as far as concerns the 1976 Equal Pay Act amendment to the FLSA, 29 U.S.C. § 206(d), addressing wage discrimination on the basis of sex. *Id.*

Similarly, in *Marshall v. Coach House Restaurant, Inc.,* 457 F.Supp. 946 (S.D.N.Y. 1978), a dispute involving overtime pay levels, the Court concluded that the policy behind binding arbitration made much more sense in the context of rate of pay disputes than, for example, racial discrimination claims because " ... rate of pay issues, al-though statutory in origin, neither require nor lend themselves to 'public law considerations.' " *Id.* at 950. The court also concluded "that Congress ha[s] manifested no preference for the resolution of wage disputes in the judicial forum," *Id.,* and that allowing employees to bypass previously agreed upon grievance procedures in order to bring rate of pay claims in federal court would be disruptive in that " 'wages and hours are at the heart of the collective bargaining process.' " *Id.* (quoting *Satterwhite v. United Parcel Service, Inc.,* 496 F.2d 448, 451 (10th Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974)).

The sole basis of Tran's FLSA claim, as with his other claims, is that his former employers owe him back wages. Since this case clearly implicates rate of pay issues, the plaintiff was required to exhaust his arbitral remedy prior to filing that claim in this Court.

### B. *The Motion for Leave to Amend*

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend pleadings "shall be freely given when justice so requires." The Supreme Court has recognized that leave should be liberally given except in cases of:

> undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment,* etc.

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The futility of plaintiff's motion for leave to amend his complaint will be addressed hereafter.

▮ In his proposed Second Amended Complaint, despite the Court's Opinion and Order of August 13, 1993, plaintiff reasserts his state and common law claims as well as his FLSA claims and adds a claim under Section 301 of the Labor Management Relations Act ("LMRA"). The state and common law claims should not have been repleaded. There is clear precedent that the LMRA preempts such claims when, as in the proposed complaint, they are based on rights

established by a collective bargaining agreement. *Paul McKee v. Transco Products, Inc.*, 874 F.2d 83 (2d Cir.1989); *Walker v. Columbia University in the City of New York*, 756 F.Supp. 149, 152 (S.D.N.Y.1991). Indeed, recognizing the holding in *Paul McKee*, the plaintiff as much as acknowledges the preemption of these claims in his supporting memorandum. Pl.Mem. at 3.[2] Accordingly, only plaintiff's claim under Section 301 need be examined.

As stated in *Steele* and *Marshall, supra*, and in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163–164, 103 S.Ct. 2281, 2289–91, 76 L.Ed.2d 476 (1983), employees must normally exhaust arbitral remedies before initiating Section 301 claims against their employers in federal court. Plaintiff relies on the holding in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), that, despite the above requirement, an employee may institute suit against his employer if the employee "has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance." *Id.* at 185, 87 S.Ct. at 914 (emphasis in original). Plaintiff also relies on the holding in *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976), that under Section 301 of the LMRA employees may resort to the courts if the union has engaged in hostile, discriminatory or arbitrary actions.

▉ The so-called *Vaca–Hines* test requires two findings in order for there to be a breach of a union's so-called duty of fair representation when deciding whether to arbitrate on behalf of an employee. First, the union's refusal to arbitrate must be "arbitrary, discriminatory or in bad faith" in refusing to arbitrate, *Vaca*, 386 U.S. at 190, 87 S.Ct. at 916, and second, the refusal must "seriously undermine the arbitral process." *Camporeale v. Airborne Freight Corp.*, 732 F.Supp. 358 (E.D.N.Y.1990) (*quoting Hines,*

424 U.S. at 567, 96 S.Ct. at 1058). *Cf. Barr v. United Parcel Service, Inc.*, 868 F.2d 36, 43 (2d. Cir.1989) (applying the *Vaca–Hines* test and finding no breach of union's duty in suit against employer and union by former employee for wrongful discharge).

Plaintiff asserts that the two-pronged *Vaca–Hines* test is satisfied here because (1) "the Union was made aware of the unfair practices of defendants back in 1985"; (2) the Union "never investigated although informally requested to do so"; (3) the Union was "again informed about the continuation of the defendants' unfair trade [sic] practices in mid–1992" but "again failed to investigate and, more importantly, failed to assist plaintiff in any manner, requiring counsel for plaintiff to subpoena the Union to obtain cooperation"; and (4) the Union "formally refused arbitration in a perfunctory manner." Pl.Mem. at 5–6.[3]

▉ None but the last of plaintiff's allegations would amount to a breach of the Union's duty of fair representation under the *Vaca–Hines* test. That test relates to a union's duty to represent employees fairly in refusing to arbitrate or while engaged in the arbitral process. The allegations of plaintiff's counsel, however, relate to fair representation of employees in the labor/management context. In order for the plaintiff to allege a Union breach of the duty of fair representation under *Vaca–Hines*, plaintiff is required to have made a direct request of the Union to invoke the grievance procedures on his behalf. *See Flanigan v. IBT, Truck Drivers Local 671*, 942 F.2d 824, 829 (2d Cir.1991) (because employees/appellants did not ask union to process their grievance, they cannot complain that the union breached its duty of fair representation). By his own admission, plaintiff's counsel did not do this until August 19, 1993. Accordingly, the issue before this Court is whether that request constituted a timely demand on the Union

---

**2.** Somewhat inconsistently, the reply affidavit of the plaintiff's counsel expressly does not concede that the LMRA preempts plaintiff's state and common law claims.

**3.** With respect to this last allegation, since plaintiff's demand for arbitration in August, 1993 was

based on activities from 1982 to July 1991, the Union official involved concluded that the delay in making the demand would have led to an adverse arbitral decision, as had another wage claim the Union had recently sought to arbitrate. Kellett Aff't. ¶ 11 and Exh. D.

permitting plaintiff to assert a claim under Section 301 of the LMRA. Only if the demand was timely could plaintiff reasonably argue that the Union's refusal to arbitrate was "perfunctory" in nature.

 Although brought only against the employers and not the Union, plaintiff's claim constitutes a hybrid action under Section 301 of the LMRA. *DelCostello,* 462 U.S. at 164–65, 103 S.Ct. at 2290–91; *Paul McKee,* 874 F.2d at 86. In such actions a six-month statute of limitations borrowed from Section 10(b) of the National Labor Relations Act applies. *DelCostello,* 462 U.S. at 169–71, 103 S.Ct. at 2293–94. A plaintiff/employee, as a union member, is presumed to be familiar with internal grievance procedures set forth in the union constitution or CBA. *See, e.g., Wozniak v. U.A.W., Local 897,* 842 F.2d 633, 636 (2d Cir.1988) (knowledge of internal grievance procedure contained in the union constitution is imputed to employee in suit by employee against employer and union; suit is precluded because internal appeals process was not exhausted). In this case the plaintiff's knowledge of the CBAs is more than just an inference. In his initial complaint, filed on October 10, 1991, the plaintiff invoked the CBAs and purported to annex a copy of the 1981 CBA as Exhibit A. Pl.'s Verified Complaint at 4.[4] Accordingly, plaintiff and his counsel had knowledge of the CBAs in October 1991 and chose nonetheless to proceed directly in federal court rather than invoke the CBAs' arbitral process. Moreover, the defendants' Answer to Amended Complaint, filed December 28, 1992, put plaintiff on explicit notice that arbitration was his sole and exclusive remedy under the CBAs. Answer to Amended Complaint ¶ 70.

This is not a situation where the discovery process brought to the plaintiff's attention a new cause of action. Instead, the only conclusion to be reached is that, at the time of the filing of this suit in October 1991, plaintiff was more interested in recovering attorney's fees than in invoking the grievance proce-

dures in which the Union would represent the plaintiff. To allow plaintiff to avoid the arbitral process by proceeding in the manner he chose in this case would be to encourage other parties to bring lawsuits, causing disruptions or circumvention of CBA grievance procedures, and would frustrate Congress's intent to encourage resolution of disputes by arbitration.

It is unfortunate for plaintiff Tran that his counsel's proceeding in this Court has caused, due to the lapse of nearly two years since the events complained of last occurred, the Union to refuse to demand arbitration and that his counsel's delay in demanding arbitration has resulted in a time bar to plaintiff's Section 301 claim. Relief may be possible, however, in an action against counsel for proceeding in the manner chosen.

## CONCLUSION

For the foregoing reasons, the plaintiff's claim under the Fair Labor Standards Act is dismissed and his motion for leave to file a second amended complaint is denied since to permit its filing would result in an exercise of futility. This case is closed.

IT IS SO ORDERED.

---

4. The copy so annexed omitted the grievance section which appears on pages 18–19. In the plaintiff's subsequent motion to file an amended complaint this omission was neither corrected nor brought to the Court's attention in any manner. In each of the complaints, plaintiff sought an award of reasonable attorneys fees as allowed under the FLSA. 29 U.S.C. § 216(b).