Angel C. **VERA**, Plaintiff,

v.

**SAKS & COMPANY**, doing business under the firm name and style of Saks Fifth Avenue, Defendant.

No. 00 Civ.9478 JGK.

United States District Court, S.D. New York.

Aug. 28, 2002.

### Opinion and Order

KOELTL, District Judge.

Plaintiff, Angel C. Vera, brought this action against his former employer, the defendant Saks & Company, seeking damages arising from allegedly unpaid wages during his period of employment.

The plaintiff contends that the defendant's practice of charging unidentified returns of merchandise against commissions for shoe salesmen such as the plaintiff violated the common law and Section 193 of the New York Labor Law. Section 193 prohibits unauthorized deductions from wages. The plaintiff also sought injunctive relief.

The plaintiff originally brought this action in state court. The defendant removed this action to this Court on the grounds that the plaintiff's claims were pre-empted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). This Court denied the plaintiff's motion to remand this case to state court. The Court found that the action was preempted by federal labor law because the action necessarily implicates a collective bargaining agreement. Any commissions that the plaintiff was entitled to were earned pursuant to the collective bargaining agreement and they were owed, if at all, under the collective bargaining agreement. (Tr. of July 13, 2001 Hearing at 22 ("Tr.").)

The defendant has now moved for summary judgment, and the plaintiff has cross-moved for summary judgment in response. The defendant contends, among other things, that the plaintiff's failure to submit his claim to arbitration, as provided for under the provisions of the collective bargaining agreement governing his employment, forecloses his ability to obtain relief in this Court. The plaintiff, in response, argues that his claim does not fall within the terms of the collective bargaining agreement's arbitration and grievance provisions, and seeks summary judgment on the issue of defendant's liability.

For·the reasons that follow, the defendant's motion for summary judgment is granted, and the plaintiff's motion is denied.

### I.

The plaintiff was employed by the defendant as a shoe salesman in the defendant's store located at 611 Fifth Avenue in New York City from 1974–1975 and from 1976–2000. (Compl.¶¶ 13–16) The plaintiff was a member of United Storeworkers, Local 2567, RWDSU, AFL–CIO, and his employment was subject to the terms and conditions of a collective bargaining agreement (the "CBA"). (Compl.¶¶ 17–18) The CBA contains a provision outlining the grievance procedure to be used for resolving disputes between employees and the defendant. That provision provides, in relevant part,

> The Union shall designate a Standing Committee of its own choice to take up with the Employer any matter arising out of the application of this Agreement with a view to its amicable settlement. Any dispute, claim, grievance or difference arising out of or relating to this Agreement which the Union and the Employer have not been able to settle, shall be submitted to arbitration upon notice by either party to the other party in writing, stating the nature of the matter to be arbitrated. The matter in dispute shall be submitted to arbitration before the American Arbitration Association of New York, under its Voluntary

Labor Arbitration Rules. Both parties agree to accept the award of the arbitrator as final and binding. The arbitrator's award of any opinion rendered in connection therewith shall be limited to the issues presented to him for decision. In any arbitration, the arbitrator shall be bound by the terms of this agreement and shall have no authority to add to, subtract from, change or modify any provision of this agreement. Each party shall bear its own costs of arbitration and shall share equally the cost of the arbitrator.

(CBA, ¶ 23., attached at Ex. A to Decl. of Richard Granofsky, sworn to October 1, 2001.) The plaintiff alleged that the defendant's practice of calculating commissions, as provided for within the CBA, violated § 193 of the New York Labor Law, (Compl.¶ 34), and the common law (Compl.¶ 45). The parties agree that the plaintiff did not use the CBA's grievance procedure before filing his complaint—he neither first contacted the Union's standing committee nor subsequently submitted his claim to arbitration. The defendant alleges that this failure entitles it to summary judgment requiring dismissal of the action, because as a matter of law, the plaintiff was required to exhaust the CBA's grievance procedures.

## II.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219 (2d Cir. 1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will determine those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *Gallo*, 22 F.3d at 1223. If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Copy Ctrs.*, 43 F.3d 29, 37 (2d Cir.1994).

Normally, when both parties seek summary judgment, the Court must " 'evaluate each party's motion on its own merits, taking care in each instance to draw all

reasonable inferences against the party whose motion is under consideration." ' *Abrams v. United States*, 797 F.2d 100, 103 (2d Cir.1986) (quoting *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir.1981)). However, the defendant's motion for summary judgment on the issue of arbitration involves a threshold question on the propriety of this Court's adjudication of the merits of the plaintiff's claim, and should therefore be decided at the outset.

## III.

The interpretation and application of the CBA's grievance and arbitration clause is governed by federal law. This Court previously denied the plaintiff's motion to remand this case to state court, because the defendant had appropriately removed the case and invoked the subject matter jurisdiction of this federal court. (Tr., at 26.) That result was based upon the determination that although the plaintiff's complaint alleged state law causes of action, because it implicates and requires interpretation of a collective bargaining agreement, the action is preempted by federal labor law, and is appropriately re-characterized as a federal claim arising under § 301 of the LMRA. (*See* Tr., at 20 ("Section 301 of the Labor Management Relations Act preempts not only claims alleging that a party has violated a provision of the collective bargaining agreement but also those state-law actions that require interpretation or substantial analysis of the terms of a collective bargaining agreement.").) In essence, the plaintiff's action is to be interpreted as a § 301 claim. (Tr., at 22 ("The plaintiff's action is preempted by federal labor law.").) Consequently, interpretation of the arbitration clause and grievance procedures contained within the collective bargaining agreement is governed by federal law.

Whether the plaintiff was first required to exhaust his claims in a grievance proceeding is a matter to be determined by this Court and not by the arbitrator. It is a "well-established principle that 'the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination.' " *Cleveland Wrecking Co. v. Iron Workers Local 40*, 136 F.3d 884, 888 (2d Cir.1997) (per curiam) (quoting *AT & T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).

The critical question is whether the CBA, when considered in its entirety, requires the parties to submit their claims to grievance procedures, including arbitration. *See Cleveland Wrecking Co.*, 136 F.3d, at 889. There is a general federal policy preference embodied in the LMRA that favors the arbitration of labor disputes; consequently, demands for arbitration should be upheld "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Gateway Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368, 379–80, 94 S.Ct. 629, 38 L.Ed.2d 583 (presumption of arbitrability extends even to safety disputes); *Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 982 (2d Cir.1997) (where the collective bargaining agreement contains an arbitration clause, there is a presumption favoring arbitrability, particularly if the clause is broad); *see Cleveland Wrecking Co.*, 136 F.3d at 889 (noting that absent a specific exclusion in a collective bargaining agreement, a broad arbitration clause should be interpreted to cover the dispute).

The CBA plainly contains a broad arbitration and grievance procedure that covers the claim asserted by the plaintiff. The CBA's grievance and arbitration clause is very broad. It requires that the Union's standing committee first attempt to resolve with the employer "any matter" arising out of the application of the CBA. (CBA, ¶ 23). It further requires that "any dispute, claim, grievance or difference arising out of or relating to this Agreement" that is not resolved in negotiations between the standing committee and employer "shall be submitted to arbitration." *Id.* Similar clauses have been found to be broad arbitration clauses. *See, e.g., Transit Mix Concrete Corp. v. Local Union No. 282, Int'l Brotherhood of Teamsters,* 809 F.2d 963, 968 (2d Cir.1987).

The plaintiff alleged that the defendant's practice of deducting unidentified returned merchandise when calculating commissions and distributing compensation under the CBA is illegal. (Compl.¶ ¶ 34, 45). This certainly is a dispute that "arises out of" and "relates to" the very terms in the CBA. Indeed the parties dispute whether, under the CBA, the plaintiff's commissions are properly considered to be owed before or after the deduction for unidentified returns. Furthermore, any claim for unpaid commissions is a claim that the plaintiff has not been paid the commissions that he is allegedly owed under the CBA. The claims alleged by the plaintiff require detailed examination of the CBA. (*See* Tr., at 25 ("Regardless of which side correctly characterizes the collective bargaining agreement, an interpretation of the CBA is necessary ... [T]he fact remains that the commissions in question were earned, if at all, under the collective bargaining agreement.").)

■ Because the plaintiff's claim for additional compensation falls squarely within the scope of the broad grievance and arbitration procedure, and the plaintiff failed to use that dispute resolution procedure, the plaintiff's claims must be dismissed. *See Allis–Chalmers v. Lueck,* 471 U.S. 202, 220–21, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) ("This complaint should have been dismissed for failure to make use of the grievance procedure established in the collective-bargaining agreement, or dismissed as pre-empted by § 301." (internal citations omitted)). In *Tran v. Tran,* 860 F.Supp. 91 (S.D.N.Y.1993), this Court dismissed claims under the common law and the New York Labor Law because they were covered by the grievance and arbitration provisions of a collective bargaining agreement. While the Court of Appeals reversed the dismissal of the Fair Labor Standards Act claim because that claim was not required to be arbitrated, it affirmed the dismissal of the common law and the New York Labor Law claims. *Tran v. Tran,* 54 F.3d 115, 118 (2d Cir. 1995). This is consistent with the holdings of other Courts of Appeals which have similarly held that claims for violations of state labor laws that were encompassed by the terms of grievance provisions of collective bargaining agreements were required to be arbitrated and that lawsuits alleging such violations should be dismissed. *See Atchley v. Heritage Cable Vision Associates,* 101 F.3d 495, 501–02 (7th Cir.1996) (alleged violation of Indiana wage payment law); *Wheeler v. Graco Trucking Corp.,* 985 F.2d 108 (3d Cir.1993) (claim under Pennsylvania Wage Payment and Collection Law).

The plaintiff alleges that his claim did not have to be submitted to the standing committee and then to arbitration because any determination of whether the commission calculation was illegal requires reference to external sources of law, and thus violates the CBA's prohibition that "the arbitrator shall be bound by the terms of this agreement and have no authority to add to, subtract from, change or modify any provision of this agreement." (CBA,

¶ 23). However, this argument mis-characterizes the scope of the limitation on the arbitrator's power. This clause is merely an integration clause, indicating that the CBA is a complete accord, and only prohibits the arbitrator from changing the terms of the CBA. The Court of Appeals recently interpreted a similar provision in a collective bargaining agreement as not limiting the scope of a broad arbitration provision. In *Cleveland Wrecking Co.*, a provision provided: "The foregoing provisions for arbitration are not intended and shall not be construed as in anywise qualifying or making subject to change any provisions of the Agreement ..." *Cleveland Wrecking Co.*, 136 F.3d at 886. The Court of Appeals concluded that this section "does not exempt anything from arbitration. Rather [it] simply cautions that the general arbitration provisions should not be interpreted to 'qualify[ ]' or 'change' any other aspect of the CBA." *Id.* at 889.

The remaining arguments of the parties are either moot or without merit. In particular, because this action must be dismissed in favor of arbitration, the plaintiff's motion for summary judgment on the merits of his claim is denied because those claims must be presented in the first instance in accordance with the grievance and arbitration provisions of the CBA.

## CONCLUSION

Because the plaintiff was required to exhaust the grievance and arbitration procedures under the CBA, his failure to do so, entitles the defendant to summary judgment. The plaintiff's action is therefore dismissed. The Clerk is directed to enter judgment dismissing the complaint and closing the case.

**SO ORDERED.**